NO. 22-3031

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

TRACIE E. FRANK,

Plaintiff-Appellant,

v.

HEARTLAND REHABILITATION HOSPITAL, LLC,

Defendant-Appellee.

_____

**BRIEF OF APPELLEE**

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
THE HONORABLE HOLLY L. TEETER
DISTRICT COURT CASE NO. 2:20-CV-002496-HLT

_____

STINSON LLP

*/s/ Sara E. Welch*
Sara E. Welch, KS #16350
Emily N. K. Monroe, KS #27428
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
Phone: (816) 842-8600
Fax: (816) 691-3495
Email: sara.welch@stinson.com
Email: emily.monroe@stinson.com

ATTORNEYS FOR DEFENDANT-
APPELLEE

**No oral argument requested**

# TABLE OF CONTENTS

**Page**

I.      CORPORATE DISCLOSURE STATEMENT ...............................................1

II.     JURISDICTIONAL STATEMENT ...............................................................1

III.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..................1

IV.     STATEMENT OF THE CASE ......................................................................3

V.      STATEMENT OF THE FACTS ....................................................................4

VI.     SUMMARY OF ARGUMENTS ..................................................................12

VII.    ARGUMENTS AND AUTHORITIES ........................................................13

        A.      Standard of Review on Appeal...........................................................13

        B.      The District Court Properly Granted Summary Judgment in
                Favor of Heartland on Frank's Claim of a Hostile Work
                Environment, and its Ruling Should Be Affirmed.............................14

                1.      Based on the uncontroverted facts in the record, no
                        reasonable jury could find that Robinson's conduct was
                        sufficiently severe or pervasive, and the district court did
                        not err by granting summary judgment on Frank's claim
                        for a hostile work environment based on sexual
                        harassment....................................................................................14

                2.      Based on the uncontroverted facts in the record, no
                        reasonable jury could find that Heartland knew about the
                        sexual harassment alleged by Frank or that its response
                        was unreasonable, and the district court did not err by
                        granting summary judgment on Frank's claim for a
                        hostile work environment based on sexual harassment...........21

        C.      The District Court Properly Granted Summary Judgment in
                Favor of Heartland on Frank's Claim of Retaliation, and its
                Ruling Should Be Affirmed. ..............................................................27

                3.      Based on the uncontroverted facts in the record, Frank
                        failed to present a prima facie case for retaliation, and the

i

district court did not err by granting summary judgment on Frank's retaliation claim. ....................................................27

4.    Based on the uncontroverted facts in the record, no reasonable jury could call into question the stated reason for giving Frank a deadline to find other employment, and the district court did not err by granting summary judgment on Frank's retaliation claim. .....................................33

VIII.  CONCLUSION................................................................................................36

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpine Bank v. Hubbell*,
  555 F.3d 1097 (10th Cir. 2009) ........................................................14

*Baskerville v. Culligan Int'l Co.*,
  50 F.3d. 428 (7th Cir. 1995) ...........................................................17

*Bishop v. National R. R. Passenger Corp.*,
  66 F.Supp.2d 650 (E.D. Pa. 1999) ...................................................18

*Burlington Northern and Santa Fe Ry. Co. v. White*,
  548 U.S. at 68, 126 S.Ct. 2405 ........................................................30

*Burnett v. Tyco Corp.*,
  203 F.3d 980 (6th Cir. 2000) ...........................................................17

*Burrell v. United Parcel Service, Inc.*,
  163 F.Supp.3d. 509 (N.D. Ill. 2016) ................................................18

*Cillo v. City of Greenwood Vill.*,
  739 F.3d 451 (10th Cir. 2013) .........................................................13

*Daniels v. United Parcel Serv., Inc.*,
  701 F.3d 620 (10th Cir. 2012) .........................................................30

*E.E.O.C. v. Caterpillar Inc.*,
  503 F.Supp.2d 995 (N.D. Ill. 2007) .................................................18

*E.E.O.C. v. Mediacom Comm'ns Corp.*,
  2021 WL 1011897 (M.D. Ga. 2021) ................................................15

*Gonzales v. Sea-Mar, Inc.*,
  99 F.Supp.2d 753 (E.D. La. 2000).....................................................18

*Guidry v. Zale Corp.*,
  969 F.Supp. 988 (M.D. La. 1997)......................................................18

*Guthrie v. Waffle House*,
  460 F.App'x 803 (11th Cir. 2012).....................................................17

*Harsco Corp. v. Renner*,
    475 F.3d 1179 (10th Cir. 2007) ...........................................................26

*Hernandez v. Metro. Transit Auth. of Harris Cnty.*,
    673 F. App'x 414 (5th Cir. 2016) ........................................................29

*Hinds v. Sprint/United Mgmt. Co.*,
    523 F.3d 1187 (10th Cir. 2008) ...........................................................30

*Hirase-Doi v. U.S. West Communications, Inc.*,
    61 F.3d 777 (10th Cir. 1995) .......................................................25, 26

*Hocevar v. Purdue Frederick Co.*,
    223 F.3d 721 (8th Cir. 2000) ...............................................................17

*Jackson v. Kansas City Kansas Public Schools Unified School District No. 500*,
    799 Fed. App'x. 586 (10th Cir. Jan. 7, 2020) (unpub.) .....................26

*Jernigan v. Alderwoods Group, Inc.*,
    489 F.Supp.2d 1180 (D. Or. 2007) .....................................................18

*Johnson v. CC Metals & Alloys, LLC*,
    413 F.Supp.3d 654 (W.D. Ky. 2019) .................................................18

*Johnson v. Tower Air, Inc.*,
    149 F.R.D. 461 (E.D.N.Y. 1993) .......................................................18

*Kean v. IT-Works, Inc.*,
    466 Fed.App'x. 468 (6th Cir. 2012) ...................................................17

*Ladner v. Walmart, Inc.*,
    834 F. App'x 893 (5th Cir. 2020) ........................................................29

*Lincoln v. BNSF Ry. Co.*,
    900 F.3d 1166 (10th Cir. 2018) ....................................................13, 14

*Lockard v. Pizza Hut, Inc.*,
    162 F.3d 1062 (10th Cir. 1998) ...........................................................16

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 93 S.Ct. 1817 (2006) ...................................................29

iv

*McKenzie v. Illinois Dept. of Transp.*,
   92 F.3d 473 (7th Cir. 1996) ...................................................................17

*Mendoza v. Borden*,
   195 F.3d 1238 (11th Cir. 1999) ....................................................15, 19

*Mitchell v. Pope*,
   189 F.App'x 911 (11th Cir. 2006) .......................................................17

*Morris v. City of Colo. Springs*,
   666 F.3d 654 (10th Cir. 2012) ....................................................15, 19

*Nunez v. Lifetime Products, Inc.*,
   725 Fed. App'x. 628 (10th Cir. 2018) .................................................13

*Park v. Pulsarlube USA, Inc.*,
   209 F.Supp.3d 1034 (N.D. Ill. 2016) ..................................................18

*Patt v. Family Health Sys., Inc.*,
   280 F.3d 749 (7th Cir. 2002) ...............................................................17

*Porter v. Houma Terrebonne Housing Auth. Bd. of Comm'rs*,
   810 F.3d 940 (5th Cir. 2015) ........................................................29, 32

*Prigmore v. Houston Pizza Ventures, Inc.*,
   189 F. Supp.2d 635 (S.D. Tex. 2002) .................................................18

*Punt v. Kelly Servs.*,
   862 F.3d 1040 (10th Cir. 2017) ..........................................................13

*Sanderson v. Wyoming Highway Patrol*,
   976 F.3d 1164 (10th Cir. 2020) ..........................................................15

*Semsroth v. City of Wichita*,
   555 F.3d 1182 (10th Cir. 2009) ..........................................................30

*Sorrell v. Illinois E.P.A.*,
   105 Fed.App'x. 115 (7th Cir. 2004) ....................................................17

*Sprague v. Thorn Americas, Inc.*,
   129 F.3d 1355 (10th Cir. 1997) ..........................................................15

*Strong v. Univ. Healthcare Sys., L.L.C.*,
   482 F.3d 802 (5th Cir. 2007) ................................................................29

*Tabor v. Hilti, Inc.*,
   703 F.3d 1206 (10th Cir. 2013) ...........................................................13

*Thompson v. Somervell Cty., Tex.*,
   431 F. App'x 338 (5th Cir. 2011) .........................................................29

*Throupe v. Univ. of Denver*,
   988 F.3d 1243 (10th Cir. 2021) ...........................................................15

*Toevs v. Reid*,
   685 F.3d 903 (10th Cir. 2012) ...............................................................2

*Turnbull v. Topeka State Hospital*,
   255 F.3d 1238 (10th Cir. 2001) ...........................................................16

*Water Pik, Inc. v. Med-Sys, Inc.*,
   726 F.3d 1136 (10th Cir. 2013) ...........................................................14

*Williams v. PMA Companies, Inc.*,
   564 F. Supp. 3d 32 (N.D.N.Y. 2021)....................................................32

*Williams v. W.D. Sports, N.M., Inc.*,
   497 F.3d 1079 (10th Cir. 2007) ...........................................................30

*Xueyan Zhou v. Intergraph Corp.*,
   353 F.Supp.3d 1220 (N.E. Ala. 2019) .................................................17

*Zisumbo v. McCleod USA Telecommunications Services, Inc.*,
   154 Fed.App'x. 715 (10th Cir. 2005) ...................................................25

**Other Authorities**

Fed. R. App. P. 26.1 ..................................................................................1

Fed. R. Civ. P. 56(a)................................................................................13

*Restatement (Second) of Agency § 213, comment d* ...............................25

## I.    CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Heartland Rehabilitation Hospital, LLC ("Heartland") states that it is a nongovernmental corporation without a parent corporation and that no publicly-held corporation owns ten percent or more of Heartland's privately-held membership interests or of any companies that owns Heartland's privately-held membership interests.

## I.    STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## II.    JURISDICTIONAL STATEMENT

Heartland has no objection to the Jurisdictional Statement from Appellant's Main Brief ("Appellant's Brief") (p. 1) of Plaintiff-Appellant Tracie E. Frank ("Frank").

## III.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The Statement of the Issues Presented for Review by Frank (Appellant's Brief, p. 2) incorrectly identifies and confuses the issues in this appeal. The correct issues are whether the district court erred in granting summary judgment in favor of Heartland on each of Frank's claims based on the uncontroverted facts -- not whether the district court erred by failing to adopt Frank's argumentative characterization of the evidence. Frank's Statement of Issues presumes that illegal harassment was "widespread in the workplace" and "involved eight to ten other

1

women," when the actual evidence in the record, as detailed by the district court, does not support those assertions. Frank's Statement of Issues also suggests, erroneously, that the district court was required to "credit" evidence of conduct Frank has pre-judged to be "abusive," despite her admission that the conduct was not based on sex. In addition, Frank's Docketing Statement (Doc. 010110652913-5) identified five issues on appeal, each one distinguishable from the four identified in Appellant's Brief (p. 2).[1]  In either case, Frank has not correctly identified the issues on appeal.  Heartland contends that the issues properly presented for this Court's review are as follows:

1.    Did the district court err in granting summary judgment on Frank's claim for a hostile work environment based on sexual harassment, considering the uncontroverted facts in the record, by finding that no reasonable jury could find that Robinson's conduct was sufficiently severe or pervasive as a matter of law?

2.    Did the district court err in granting summary judgment on Frank's claim for a hostile work environment based on sexual harassment, considering the uncontroverted facts in the record, by finding that no reasonable jury could find

---

[1] To the extent that Frank does not address the issues from the Docketing Statement in Appellant's Brief, Heartland assumes that those issues or arguments are abandoned.  *See Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012) ("Arguments not clearly made in a party's opening brief are deemed waived.").

that Heartland knew about the sexual harassment or that its response was unreasonable?

      3.     Did the district court err in granting summary judgment on Frank's claim for retaliation, considering the uncontroverted facts in the record, by finding that Frank had not presented a prima facie case?

      4.     Did the district court err in granting summary judgment on Frank's claim for retaliation, considering the uncontroverted facts in the record, by finding that no reasonable factfinder could call into question Heartland's stated reason for giving Frank a deadline to find other employment?

## IV.   STATEMENT OF THE CASE

Frank was an employee of Heartland who reported sexual harassment by a co-worker (Robinson) to Heartland's Human Resources department months after having been placed on notice by her supervisor Sorensen that her work performance was inadequate, weeks after Frank told Sorensen that she was looking for outside employment, and the very same day as Sorensen encouraged her to make this report.  On the next business day, Heartland's Human Resources representative promptly investigated Frank's claim, and the alleged harasser voluntarily resigned the same day he was interviewed, before Heartland could issue any findings.  Two weeks later, after having already allowed Frank several weeks to look for other work while she continued to perform below expectations,

Sorensen told Frank that she could not continue her job search indefinitely. Frank has offered no evidence connecting her report to Human Resources and Sorensen's eventual directive that her job search – initiated by Frank voluntarily – come to an end. The same day Sorensen communicated this, Frank submitted her letter of resignation, having already obtained another job. Frank never expressed any dissatisfaction with the additional time she was given to wrap up her job search, and never asked to remain at Heartland longer to avoid the one-week gap in employment about which she now complains.

After her employment ended, Frank filed suit alleging that she experienced a hostile work environment based on sexual harassment and retaliation in violation of Title VII. The district court granted Heartland's Motion for Summary Judgment on all claims in its Memorandum and Order ("Order"). App., Vol. II, 145–161. For the reasons set forth below, Heartland requests that this Court affirm the decision of the district court.

## V.    STATEMENT OF THE FACTS

The district court entered summary judgment based on facts it determined to be uncontroverted as a matter of law. Those uncontroverted facts are set out in the district court's Order. App., Vol. II, 145–161.[2] Heartland incorporates those

---

[2] The Background section consists of less than two full pages. (App., Vol. II, 145–147). The Memorandum and Order specifically articulated in a footnote that: "[t]he Court relies on undisputed facts and construes any disputed facts in the non-

findings of uncontroverted facts here by reference and includes below the district court's "Background" summary (with citations to the appellate record) in order to highlight some key material facts that Frank excluded from Appellant's Brief. These uncontroverted facts were integral to the district court's legal conclusions.

Frank worked for Heartland from June 2018 to September 13, 2019. App., Vol. II, 145; citing App., Vol. I, 53, ¶ 1. She worked as an executive assistant to Chief Nursing Officer Alicia Sorensen. App., Vol. II, 145; citing App., Vol. I, 53, ¶¶ 2–3. Sorensen hired Frank and was her direct supervisor. App., Vol. II, 145; citing App., Vol. I, 53, ¶ 4. In April 2019, Sorensen presented Frank with a "Last Chance Agreement" that outlined job expectations that she perceived Frank was failing to meet, such as making errors leading to inaccurate expense reports and failing to make appropriate staffing decisions. App., Vol. II, 145–146; citing App., Vol. I, 54, ¶¶ 8–9. Frank believed the document was inaccurate and exaggerated. App., Vol. II, 146; citing App., Vol. I, 157, ¶ 8. By July 2019, Frank told Sorensen that she was looking for a new job. App., Vol. II, 146; citing App., Vol. I, 157, ¶ 10. On August 30, 2019, Sorensen told Frank that she could not keep her job open-ended, and she gave Frank until September 13 to find another job, or else she would be terminated. App., Vol. II, 146; citing App., Vol. I, 158–159, ¶¶ 13, 15.

---

moving party's favor. Additional facts are included throughout the order." (App., Vol. II, fn. 2).

Frank had secured a job with another organization at that point. App., Vol. II, 146; citing App., Vol. I, 159, ¶ 16. That same day, August 30, 2019, Frank submitted her resignation letter with two-weeks' notice. App., Vol. II, 146; citing App., Vol. I, 55, ¶¶ 15–16.

During Frank's short time working for Heartland, Adriel Robinson was the Director of Quality Management. App., Vol. II, 146; citing App., Vol. I, 54, ¶ 6. Robinson is African American. App., Vol. II, 146; citing App., Vol. I, 169, ¶ 13. Robinson was not Frank's supervisor. App., Vol. II, 146; citing App., Vol. I, 53, ¶¶ 2, 4.  Robinson's office was next to Frank's. App., Vol. II, 146; citing App., Vol. I, 168, ¶ 6.  From April 2019 to August 2019, Frank claims that Robinson made the following comments to Frank: (1) called a date Frank mentioned "a dick meeting;" (2) said "you can't miss those bad boys" about Frank's breasts; (3) asked whether Frank had ever received any responses on dating apps from "black dudes;" and (4) told Frank that "firemen are only out for one thing." App., Vol. II, 146; citing App., Vol. I, 55–56, ¶ 20. Additionally, on five to seven occasions Robinson said things to Frank like "I like your shirt today" while looking her up and down. App., Vol. II, 146; citing App., Vol. I, 179, ¶ 76 and App., Vol. I, 56, ¶ 20. Frank's coworker, Cheryl Morrison, witnessed the "dick meeting" and "firemen" comments and the up-and-down looks. App., Vol. II, 146; citing App., Vol. I, 179, ¶¶ 75–76.  Robinson would also frequently look at Frank and tell her how nice she

6

looked. App., Vol. II, 146; citing App., Vol. I, 169, ¶ 12. After the "dick meeting" comment occurred in April 2019, Frank claims she started feeling very uncomfortable around Robinson. App., Vol. II, 146; citing App., Vol. I, 168, ¶ 7. Frank also claims that she had heard Robinson had harassed other women, and nothing had been done about it. App., Vol. II, 146–147; citing App., Vol. I, 170, ¶ 17. Frank kept her office door closed to keep her distance from Robinson. App., Vol. II, 147; citing App., Vol. I, 55, ¶ 19.

On August 16, 2019, Frank told Sorensen that she was going to report Robinson to Human Resources. App., Vol. II, 147; citing App., Vol. I, 161, ¶ 21. Sorensen supported Frank telling Human Resources about Robinson and said that if something had happened to make Frank uncomfortable, then she should report it. App., Vol. II, 147; citing App., Vol. I, 56, ¶¶ 22–23. Frank reported Robinson to Human Resources that day. App., Vol. II, 147; citing App., Vol. I, 56, ¶ 24. Human Resources interviewed Robinson on August 19 (the next business day), and he voluntarily resigned immediately after. App., Vol. II, 147; citing App., Vol. I, 57, ¶¶ 26–27. Plaintiff felt better after reporting Robinson. App., Vol. II, 147; citing App., Vol. I, 57, ¶ 30. She no longer had headaches or was unhappy. App., Vol. II, 147; citing App., Vol. I, 57, ¶ 31. After Frank left Heartland, she filed charges with the Equal Employment Opportunity Commission ("EEOC"), and she

filed the lawsuit after receiving her right to sue letter. App., Vol. II, 147; citing App., Vol. I, 11, ¶¶ 5–7.

In this case, the timeline established by the uncontroverted facts is critical to understanding the district court's decision:

- June 2018 – Frank starts working for Heartland.

- April 2019 – Frank receives the "Last Chance Agreement" detailing her performance deficiencies.

- April 2019 – Frank contends she starts to feel uncomfortable around Robinson (ten months after she began working with him).

- July 2019 – Frank tells Sorensen that she is going to look for other work.

- August 16, 2019 – Frank tells Sorensen that she plans to report Robinson.  Sorensen is supportive of this, and Frank does indeed report Robinson to Human Resources.

- August 19, 2019 (next business day) – Human Resources interviews Robinson, and he voluntarily resigns immediately.

- August 30, 2019 – Sorensen tells Frank that she cannot continue working for Heartland while looking for another job indefinitely, and that she would have to find other work by September 13, 2019.  That

<u>same</u> day, with an offer in hand, Frank tenders her resignation effective September 13, 2019.

- September 13, 2019 – Frank's last day at Heartland.

Heartland notes that Appellant's Brief includes "facts" that were not included in the arguments or brief she presented to the district court. For example, in Appellant's Brief, Frank offers an entire section (Section H: "August 2019 Reports by Two Nurses of Demeaning Treatment") (Appellant's Brief, p. 18) of "facts" that were not part of the brief Appellant presented to the district court – likely because they offer no evidence of any sexually harassing conduct and, as such, are not relevant to Frank's claims. Additionally, Frank offers a paragraph about Penny Craig's deposition testimony concerning general disciplinary procedures and Robinson's "disciplinary" file.[3] Appellant's Brief, p. 20. These new "facts" also have no bearing on this case, since it is undisputed that Robinson resigned the very day he was interviewed, rendering unnecessary any discussions about whether or how to discipline him. Moreover, Craig did not testify (nor was she asked) whether she documents in writing conversations with Heartland's regional office about employee discipline.

---

[3] This is more accurately described as a collection of investigative documents rather than a "disciplinary file."

9

Appellant also peppers her Statement of Facts with additional, selective "facts" that were not part of her argument to the district court – some of which do not include other important contextual information (for example, the hearsay statements of Megan Hall) and others of which simply confirm that Heartland (including Sorensen) perceived Robinson as inappropriate and arrogant – behavior for which he was counseled.  Other such new "facts" include:

1.      "[Megan Hall][4] also heard [Robinson] insulting Ms. Colbern, such as commenting about, 'living with mommy and daddy,' and telling her, '[I]f you eat that you won't fit into your pretty clothes.'"  Appellant's Brief, p. 12.

2.      "Sorensen heard this encounter [between Robinson, Frank, and Cheryl Morrison about who should retrieve a box of copy paper], which happened [*sic*] her office, and told him his behavior was 'wildly inappropriate.' ...  She was aware that Robinson and Ms. Morrison would 'constantly bicker back and forth.' ...  However, she never reported these incidents, because she felt he was only being 'very egotistical'...." Appellant's Brief, p. 17 (internal citations omitted).

---

[4] Megan Hall provided this information to Heartland in September 2018, and noted that Robinson had not said anything that offended Hall in the year or so prior.  App., Vol. I, 114.

10

3.    "Ms. Frank immediately scrambled[5] to locate another position, and found an opening at the University of Kansas Medical Center." Appellant's Brief, p. 22 (internal citations omitted).

4.    "Ms. Frank testified that she lost one-week's pay, because[6] of the necessity of starting on a payroll Monday, which was September 20, at her new employer."   Appellant's Brief, pp. 22–23 (internal citations omitted).

These new "facts" are being offered now in an effort to buttress what the district court found to be a deficient record of actionable sexual harassment. Instead, these new "facts" are further evidence that much of what Robinson's co-workers complained about was rude and overbearing behavior – not sexual harassment. Frank's attempt to salvage a legally deficient claim by painting Robinson as an "abusive" person generally should be rejected by this Court, as it properly was rejected by the district court.

---

[5] This new "fact" actually contradicts the evidence in the record, in that "Plaintiff had told [Sorensen] in July she was looking for a new job and already had a new job lined up on August 30," the very same day as Sorensen gave Frank a termination date.  (App., Vol. II, 158).  Frank did not "scramble" – when Sorensen told her that she needed to wrap up her job search, Frank already had a job offer in hand.

[6] Frank has offered no evidence that Sorensen or anyone else at Heartland knew of her alleged "payroll Monday" dilemma and Frank does not contend that she even asked to delay her departure date to avoid a gap in employment.

## VI.   SUMMARY OF ARGUMENTS

The district court did not err in granting summary judgment on Frank's claims of a hostile work environment based on sexual harassment or retaliation. Considering the uncontroverted facts in the record, even in the light most favorable to Frank, no reasonable jury could find that Robinson's conduct was sufficiently severe or pervasive under controlling precedent, nor could it find that Heartland knew about the sexual harassment Frank alleged or that its response to Frank's complaints – once she made them – was unreasonable.  The district court neither miscounted nor undercounted the statements or actions of Robinson.  Instead, Frank's recitation of allegedly sexually harassing conduct focuses primarily on uncorroborated statements pertaining to events involving *other employees* and many do not relate to sex or gender at all. Indeed, Frank's counsel seems intent on re-litigating the allegations made by his former client, Angela Welch, which have long since been resolved.

As to the claim of retaliation, the district court did not err in finding that: Frank failed to present a prima facie case when she did not establish that the deadline set for Frank's already-planned resignation was materially adverse; Frank failed to establish a causal link between Heartland's action and Frank's protected activity, and Frank failed to establish that Heartland's legitimate, non-

discriminatory reason for setting a deadline for her job search to end was somehow pretext for illegal discrimination or retaliation.

## VII.  ARGUMENTS AND AUTHORITIES

### A.  Standard of Review on Appeal

The Tenth Circuit's review of an order granting summary judgment is *de novo*, and this Court will apply the same standard the district court applied. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013); *Punt v. Kelly Servs.*, 862 F.3d 1040, 1046 (10th Cir. 2017). Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When applying this standard, this Court "'must view facts in the light most favorable to the non-moving part[y]'" and "'resolv[e] all factual disputes and reasonable inferences in [the non-moving party's] favor.'" *Cillo*, 739 F.3d at 461 (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)).  A fact is only material if it could affect the outcome of a lawsuit. *Cillo*, 739 F.3d at 461; *Nunez v. Lifetime Products, Inc.*, 725 Fed. App'x. 628, 630 (10th Cir. 2018).

If the non-moving party "bears the burden of persuasion on a claim at trial, summary judgment may be warranted if [the moving party] points out a lack of evidence to support an essential element of the claim and the [non-moving party] cannot identify specific facts that would create a genuine issue." *Lincoln v. BNSF*

13

*Ry. Co.*, 900 F.3d 1166, 1180 (10th Cir. 2018) (quoting *Water Pik, Inc. v. Med-Sys, Inc.*, 726 F.3d 1136, 1143–44 (10th Cir. 2013).  Furthermore, in reviewing a grant of summary judgment, the Court may "affirm on any ground supported by the record, so long as the appellant has had a fair opportunity to address that ground." *Lincoln*, 900 F.3d at 1180 (quoting *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1108 (10th Cir. 2009)).

> **B.    The District Court Properly Granted Summary Judgment in Favor of Heartland on Frank's Claim of a Hostile Work Environment, and its Ruling Should Be Affirmed.**
>
> **1.    Based on the uncontroverted facts in the record, no reasonable jury could find that Robinson's conduct was sufficiently severe or pervasive, and the district court did not err by granting summary judgment on Frank's claim for a hostile work environment based on sexual harassment.**

Appellant's Brief argues that the alleged harassment Frank experienced was severe and pervasive, despite the district court's findings that Robinson's comments were "inappropriate and crude" but "not particularly graphic and not soliciting a sexual relationship." Appellant's Brief, p. 29, quoting App., Vol. II, 150.  The district court carefully analyzed whether a reasonable person would have objectively found the alleged harassment as described by Frank to be severe and pervasive. App., Vol. II, 149. In doing so, the district court compared the specific allegations made by Frank with the allegations in other cases, finding that the alleged harassment here was not objectively severe or pervasive.  App., Vol. II,

14

148–154.   The district court compared the facts alleged by Frank to facts in six other cases[7] in reaching its conclusion that Frank's allegations were deficient as a matter of law. App., Vol. II, 148–154.

The Appellant's Brief argues that the district court undercounted the instances of harassment, claiming that by doing so, it committed reversible error. To the extent that the district court's Order specifically quantified the instances, the district court counted as follows: "Robinson made four inappropriate comments, complimented Plaintiff's shirt five to seven times while looking her up and down, and frequently looked at Plaintiff and told her how nice she looked over a four-month period." App., Vol. II, 149.   Frank quantifies the same as follows: "the evidence is comprised of at least 15 separate instances of offensive conduct, over approximately four months." Appellant's Brief, p. 34.   Although Frank did not quantify how often Robinson "frequently" told her how nice she looked, assuming that it happened even once a month during the four months in question, Frank's count of fifteen "separate instances" is not different from the incidents considered by the district court.   No matter how many times Appellant's Brief repeats or

---

[7] *Morris v. City of Colo. Springs*, 666 F.3d 654 (10th Cir. 2012); *Throupe v. Univ. of Denver*, 988 F.3d 1243 (10th Cir. 2021); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 (10th Cir. 1997); *Mendoza v. Borden*, 195 F.3d 1238 (11th Cir. 1999); *Sanderson v. Wyoming Highway Patrol*, 976 F.3d 1164, 1177 (10th Cir. 2020); *EEOC v. Mediacom Comm'ns Corp.*, 2021 WL 1011897 (M.D. Ga. 2021).

restates the allegations, whether the particular offensive comments were corroborated by another co-worker or not, the district court clearly accepted what Frank offered as evidence of pervasiveness as true for purposes of the summary judgment motion, and the district court still found that offering to be legally underwhelming.

For example, Frank did not experience (nor does she allege) unwanted touching by Robinson, much less any instance of sexual assault, which often is the basis for a finding of "severe" harassment. *See, e.g., Turnbull v. Topeka State Hospital*, 255 F.3d 1238 (10th Cir. 2001); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062 (10th Cir. 1998). Robinson's comments also could not be objectively perceived as severe, in that they were not objectively threatening (nor did Frank report feeling threatened by them). Viewed through both the subjective and objective lens, the handful of comments Frank alleges Robinson made to her between April and August 2019 simply do not constitute "severe" harassment.

Likewise, Frank has also failed to demonstrate as a matter of law that the comments constituted "pervasive" harassment. Not all of the comments are even obviously offensive in context. For example, the question to Frank about whether she ever received any responses on dating applications from "black dudes" (the "Dudes Comment") (App., Vol. I, 56, ¶ 20) does not on its face indicate that Robinson wanted to date Frank. Instead, the question simply could have reflected

16

curiosity by a co-worker who was listening to someone (Frank) who was talking

about her dating experiences.  Similarly, a comment about a shirt worn by Frank is

not objectively hostile or abusive (App., Vol. I, 56–57, ¶ 20), nor is a generic

comment about firefighters (*Id*. ¶ 20).  Still, the analysis of pervasiveness often

comes down to the nature and the number of incidents or comments.  Compared to

the litany of cases cited in the Suggestions in Support of Defendant's Motion for

Summary Judgment (App., Vol. I, 62–65)[8] where courts found inappropriate

---

[8] *See, e.g., Kean v. IT-Works, Inc.*, 466 Fed.App'x. 468, 470 (6th Cir. 2012)
(finding that comments about women's breasts and genitalia and three ex-wives do
not suffice to establish a severe and pervasive work environment); *Burnett v. Tyco
Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) (finding that "a single battery coupled
with two merely offensive remarks over a six-month period does not create an
issue of material fact as to whether the conduct alleged was sufficiently severe to
create a hostile work environment"); *Sorrell v. Illinois E.P.A.*, 105 Fed.App'x. 115,
116 (7th Cir. 2004) (finding that conduct and comments, including comments
about an orgasm and whether plaintiff was feminine, spread over the course of
eight months were not severe or pervasive); *Patt v. Family Health Sys., Inc.*, 280
F.3d 749, 754 (7th Cir. 2002) (finding that eight comments over seven years was
not sufficiently pervasive); *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 480
(7th Cir. 1996) (finding "three sexually suggestive comments over a three month
period" did not rise to the level of unreasonably interfering with plaintiff's work
environment); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430–431 (7th Cir.
1995) (finding that "handful of comments spread over months" did not add up to
sexual harassment); *Hocevar v. Purdue Frederick Co.*, 223 F.3d 721, 737–738 (8th
Cir. 2000) (finding that four incidents over a three year period and a few
inappropriate comments and "an unwanted slow dance" do not amount to severe or
pervasive harassment); *Guthrie v. Waffle House*, 460 F.App'x 803, 807 (11th Cir.
2012) (finding that "a few dozen comments or actions … spread out over a period
of eleven months" was not pervasive); *Mitchell v. Pope*, 189 F.App'x 911, 913
(11th Cir. 2006 (finding that "16 specific instances of offensive conduct" over four
years was insufficiently frequent); *Xueyan Zhou v. Intergraph Corp.*, 353

comments made over a comparable period of time to be insufficiently pervasive, it

is no wonder that the district court found Frank's allegations to be inadequate as a

_____

F.Supp.3d 1220, 1231 (N.E. Ala. 2019) (finding that fifteen instances over the course of three-to-four years is too infrequent to be pervasive); *Burrell v. United Parcel Service, Inc.*, 163 F.Supp.3d. 509, 521 (N.D. Ill. 2016) (finding that three comments over five months are too isolated to be pervasive); *Park v. Pulsarlube USA, Inc.*, 209 F.Supp.3d 1034, 1042 (N.D. Ill. 2016) (finding that compliments about appearance and a comment that the alleged harasser "would like to sleep with his arms around [plaintiff] in a corner" were "mere offensive utterances" rather than severe or pervasive harassment); *E.E.O.C. v. Caterpillar Inc.*, 503 F.Supp.2d 995, 1045 (N.D. Ill. 2007) (finding that eight events, including comments about plaintiff's "ass," her "cute little body," and being a "dizzy bitch," over the course of three years are not sufficiently pervasive); *Johnson v. CC Metals & Alloys, LLC*, 413 F.Supp.3d 654, 664 (W.D. Ky. 2019) (finding that sexual slurs written on overtime sheets repeatedly and four comments over the course of an eleven-month period did not establish pervasive harassment); *Gonzales v. Sea-Mar, Inc.*, 99 F.Supp.2d 753, 755 (E.D. La. 2000) (finding that "a total of six comments during a four-month period of [plaintiff's] nineteen-month employment" is not sufficiently pervasive); *Guidry v. Zale Corp.*, 969 F.Supp. 988, 990 (M.D. La. 1997) (finding that comments about plaintiff's breasts and hips and about wet dreams made during three isolated events over a period of six or more months were not sufficiently pervasive); *Johnson v. Tower Air, Inc.*, 149 F.R.D. 461, 469–470 (E.D.N.Y. 1993) (finding that nine incidents of abusive language or obscene gestures, including grabbing one's own crotch, over a two week period insufficiently pervasive); *Jernigan v. Alderwoods Group, Inc.*, 489 F.Supp.2d 1180, 1199 (D. Or. 2007) (finding that comments including one about the sexiness of the plaintiff and some including profanity not sufficiently pervasive); *Bishop v. National R. R. Passenger Corp.*, 66 F.Supp.2d 650, 663 (E.D. Pa. 1999) (finding that staring, leering, and a comment about a "stud muffin" over the course of 18 months does not constitute pervasive conduct); *Prigmore v. Houston Pizza Ventures, Inc.*, 189 F. Supp.2d 635, 639, 642, fn. 5 (S.D. Tex. 2002) (finding that suggestive comments which may "amount to indirect propositions for sex" were not pervasive enough to alter the terms and conditions of plaintiff's employment).

matter of law.  The district court did not commit reversible error in finding that the alleged harassment was neither sufficiently (and objectively) severe or pervasive.

Frank contends that the district court "maim[ed]" the Tenth Circuit's totality of the circumstances standard by finding that Title VII "requires a baseline of objectively offensive conduct" (*Mendoza v. Borden*, 195 F.3d 1238, 1256 (11th Cir. 1999), as quoted by the district court in its Order).  Appellant's Brief, pp. 37–38; citing App., Vol. II, 150.  It was not error, however, for the district court to adopt the reasoning of the *Mendoza* case; the Tenth Circuit has also cited the Eleventh Circuit's decision in *Mendoza* in its analysis as to whether harassing conduct was sufficiently severe to be actionable under Title VII.  *See Morris v. City of Colorado Springs*, 666 F.3d 654, 669 (10th Cir. 2012) (citing *Mendoza*).  Furthermore, the district court cited the "totality of the circumstances" standard in its decision.  App., Vol. II, 152.  Contrary to Frank's suggestion, the district court gave no indication that it was ignoring Robinson's more benign allegations in reaching its decision.  *See generally* App. Vol. II, 145–161.  Instead, the district court simply did not find Frank's description of Robinson's conduct sufficient to rise beyond "inappropriate and crude" to the level of actionable sexual harassment.  The district court looked at the totality of the circumstances; it just did not agree that the totality of those circumstances (including the timing of various events) constituted severe and pervasive harassment of Frank based on sex.

Frank also argues that the district court erred by "improperly discounting the evidence of a hostile work environment because it occurred over a relatively short duration." Appellant's Brief, p. 38, citing App., Vol. II, 150. The only apparent basis for this claimed error is the single sentence: "At most, these handful of remarks over the course of four months were 'mere offensive utterance[s].'" App., Vol. II, 150. The district court never said, however, that the remarks were merely offensive and not harassing because of the length of time involved. Instead, the preceding sentence clarifies the district court's meaning in using the phrase "mere offensive utterance[s]" and belies Frank's contention: "But the comments are not particularly graphic and are not soliciting a sexual relationship." App., Vol. II, 150. Frank fails to provide any evidence that the district court improperly discounted the evidence on the record.

Finally, while the EEOC submitted an amicus brief concerning the difference between a significant adverse employment action for analysis of alleged discrimination and material adversity in the context of alleged retaliation, the EEOC expressly declined to weigh in on the district court's ruling granting summary judgment on the claim for a hostile work environment. *See generally* Brief of the Equal Employment Opportunity Commission as Amicus Curiae in Support of Plaintiff-Appellant and Reversal ("EEOC's Brief").

**2.    Based on the uncontroverted facts in the record, no reasonable jury could find that Heartland knew about the sexual harassment alleged by Frank or that its response was unreasonable, and the district court did not err by granting summary judgment on Frank's claim for a hostile work environment based on sexual harassment.**

Frank again argues that the district court erred in tallying her alleged harassing events, when in fact, the district court clearly read the entire record before it and properly distinguished between allegations that a reasonable jury could conclude supported a finding of sexual harassment those that could not. Appellant's Brief now also attempts to add new "facts" to the record in an effort to further increase her "count," as noted in Section VI, above.  The district court, however, carefully avoided "double counting" the incidents described by Frank, no matter how many times her counsel repeated them in his opposition to Heartland's Motion for Summary Judgment.

Moreover, to make it look as though Heartland somehow endorsed Robinson's behavior and knew that Frank would be harassed before she or anyone else reported it, Appellant's Brief claims that "several of [Robinson's] female peers, also Directors had reported harassing conduct by him, including Ms. Welch, Director of Nursing[;] Ms. Colbern, Director of Health and Information Management; and Ms. Hall, now CEO, who was the Director of Therapy." Appellant's Brief, p. 40.  As explained in Heartland's reply brief in support of its Motion for Summary Judgment, many of the prior reports about Robinson did not

21

involve alleged sexual harassment at all, and many reports (like Angela Welch's) were not corroborated. Frank's attempt to suggest that Heartland's former CEO John Hughes endorsed the sexual harassment allegations made by Angela Welch when he told her that "inappropriate things have been reported by others" ignores the fact that Hughes testified only that he was aware of aggressive and rude behavior by Robinson – not sexual harassment. App., Vol. II, 8 (Hughes' Deposition, 16:8–17:16), 12 (Hughes' Deposition, 30:6–33:14). In addition, as noted above, Megan Hall's description of conduct by Robinson clearly was a description of past events, as she notes that after Angela Welch left (in 2017 – well before Frank started working at Heartland), Robinson's conduct improved. Indeed, as noted in the district court's Order, Frank testified that she first became uncomfortable with Robinson's conduct ten months after she started working with him. Frank's arguments are notable in the extent to which she attempts to rely on stale allegations by others and focuses attention away from what actually happened to her, what she reported to Human Resources, and when she did so.

Appellant's Brief further takes issue with the district court's counting in this case by arguing that the district court erred by counting the number of reports or investigations rather than counting single instances of alleged bad behavior. Appellant's Brief, p. 45. Appellant's Brief claims that there were "at least eight women" who had made prior reports. Appellant's Brief, pp. 45–46. However, the

district court properly considered the four reports or investigations identified in the record, regardless of the number of women involved in those reports or investigations. App., Vol. II, 155–156. And, as noted above, not all of the women interviewed in those investigations reported conduct that even arguably could be considered sexual harassment. The district court properly considered these investigations or reports in deciding whether Frank could prove constructive notice to Heartland, and the district court found that she could not.

Specifically, the district court held that there were four instances of prior reports[9] known to Heartland: (1) the December 2017 EEOC charge (from Welch), (2) the September 2018 investigation, (3) the February 2019 investigation, and (4) the August 2019 situation in which "two nurses reported that Robinson refused to help 'work the floor' when they were shorthanded." App., Vol. II, 155–156. As the district court notes, it is appropriate for the constructive notice analysis to include a comparison of Frank's allegations to the prior reports in terms of "extent, seriousness, similarity, and nearness in time." App., Vol. II, 155. As noted above, the reports of two nurses who complained that Robinson failed to help on the floor

---

[9] In the Appellant's Brief, Frank argues that the investigative file containing prior reports concerning Robinson are admissible and non-hearsay. Appellant's Brief, pp. 44–45. The district court did not find otherwise, and while Heartland argued below that the reports themselves may be hearsay (or hearsay within hearsay), it is not an issue that needs to be resolved for the purposes of this appeal.

when they were short-handed has no bearing on Frank's claim of sexual harassment.  Moreover, the 2018 complaint by TeCara Williams did not involve any allegation by her of sexually harassing conduct.  Instead, the district court found that the prior report most "closely resembl[ing]" Frank's was Angela Welch's report from 2017.  App., Vol. II, 156.  However, as the district court found, Welch's charge was filed long before Frank even started working for Heartland.  More importantly, her lengthy complaint "was not directed towards Robinson, and she only accused Robinson of making two inappropriate remarks."  App., Vol. II, 156.  The district court also noted that the undisputed record shows that Heartland investigated Frank's report the "next business day, and Robinson immediately resigned."  App., Vol. II, 155.  "[N]o reasonable jury could conclude that Defendant's remedy was not reasonably calculated to end the harassment once it had actual knowledge."  App., Vol. II, 155.  Additionally, Frank "has not shown harassment incidents that were 'so egregious, numerous, and concentrated as to add up to a campaign of harassment' such that Defendant was on notice of Robinson's behavior" prior to Frank's report.  App., Vol. II, 157.

Appellant's Brief fails to identify any prior report more similar to Frank's than Welch's 2017 EEOC charge.  And Frank's suggestion that "at least eight women" reported actionable harassment by Robinson is clearly an exaggeration.  But whether one counts the four investigations since 2017 or the number of

individuals who complained about some aspect of Robinson's behavior, the analysis does not change. Heartland did not have constructive notice of the sexual harassment alleged by Frank in 2019. One way to raise a genuine issue of material fact regarding constructive notice of sexual harassment is to offer evidence of sexual harassment by the same harasser that is similar in nature and near in time. *Hirase-Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 783 (10th Cir. 1995), abrogated on other grounds as recognized in *Zisumbo v. McCleod USA Telecommunications Services, Inc.*, 154 Fed.App'x. 715 (10th Cir. 2005). Welch's December 2017 EEOC charge, which mentions a couple of comments allegedly made by Robinson, is not sufficiently "near in time" to establish constructive notice for Heartland of Robinson's alleged sexual harassment of Frank as reported in August 2019, almost two years later.

Appellant's Brief also criticizes the district court for noting that Frank relied on the theory of the "dangerous employee" (Appellant's Brief, p. 43), but then goes on to cite *Hirase-Doi*, a case that articulates that very theory (Appellant's Brief, p. 46, citing *Hirase-Doi*). "[T]here is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm." *Hirase-Doi*, at 784, quoting *Restatement (Second) of Agency § 213, comment d.* The court's ruling in *Hirase-Doi*, however, does not support Frank's claim in this case. Unlike the facts alleged by Frank, the

alleged harasser in *Hirase-Doi* was only employed by U.S. West for three months (*Hirase-Doi*, at 780), and all of the instances and reports of the alleged harasser's behavior came in very quick succession.  In contrast, the complaints about Robinson's behavior – many of which were not about sexual harassment – took place during a period of several years (with nearly two years separating the comments alleged by Angela Welch and the events reported by Frank).

To survive summary judgment on the sexual harassment claim, Frank must prove that the employer "had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." *Jackson v. Kansas City Kansas Public Schools Unified School District No. 500*, 799 Fed. App'x. 586, 590 – 91 (10th Cir. Jan. 7, 2020) (unpub.) (quoting *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)).  Here, despite the fact that Frank alleges that Robinson made offensive comments to her beginning in April 2019, she did not report him to Heartland until August 16, 2019.  App., Vol. I, 55–56, ¶¶ 20–21.  Heartland did not have actual knowledge.  Neither did it have constructive knowledge, as explained above.  Two comments reported almost two years prior to Frank's report does not establish constructive knowledge.

No reasonable jury could find that Heartland knew about the sexual harassment about which Frank complained or that that its response to those complaints was unreasonable, and the district court did not err by granting

summary judgment on Frank's claim for a hostile work environment based on sexual harassment. Heartland did not have actual knowledge of harassment by Robinson of Frank, nor did it have constructive knowledge of such conduct. Furthermore, its response and the outcome to Frank's report were perfectly appropriate – Frank told her supervisor, Sorensen, who supported Frank telling Human Resources about Robinson; Frank reported; HR investigated on the next business day; and Robinson quit the same day as his interview. App., Vol. II, 147. As the record shows, Frank "felt better after reporting Robinson. . . . She no longer had headaches or was unhappy." App., Vol. II, 147 (internal citations omitted). Of course, if Frank had reported her concerns sooner, the situation could have been addressed that much earlier.

Additionally, as noted above, while the EEOC submitted an amicus brief concerning the difference between a significant adverse employment action for analysis of alleged discrimination and material adversity in the context of alleged retaliation, the EEOC did not weigh in on the district court's ruling granting summary judgment on the claim for a hostile work environment. *See generally* EEOC's Brief.

    **C.**    **The District Court Properly Granted Summary Judgment in Favor of Heartland on Frank's Claim of Retaliation, and its Ruling Should Be Affirmed.**

        **3.**    **Based on the uncontroverted facts in the record, Frank failed to present a prima facie case for retaliation, and the district**

**court did not err by granting summary judgment on Frank's retaliation claim.**

Heartland demonstrated to the district court that Frank failed to present a prima facie case of retaliation. The district court's Order notes correctly the parties do not "dispute that Plaintiff engaged in protected opposition to discrimination" by reporting Robinson's alleged harassment. App., Vol. II, 157. As to causation to connect the protected activity with any adverse employment action, however, Frank fails to make the necessary connection.

The district court noted two potentially adverse employment actions: "(1) the 'Last Chance Agreement' that led to Plaintiff seeking other employment; and (2) Sorensen's imposition of a hard deadline for Plaintiff to leave approximately two weeks[10] after her initial complaint." App., Vol. II, 158. As to the first alleged retaliatory incident, Plaintiff does not and cannot show a causal link between the issuance of the Last Chance Agreement and the protected activity, because the Last Chance Agreement happened *prior to* the protected activity. App., Vol. II, 158. As such, the district court focused on the second potentially adverse event, noting that "Plaintiff does <u>not</u> argue that she was terminated due to her protected activity,

---

[10] Frank testified that she did not ask anyone at the hospital if she could end her notice period early to start her new job. App., Vol. II, page 230 (Frank's Deposition, 139:12 – 140:7). Nor is there any evidence that Frank asked anyone to remain at Heartland for an additional period of time, so that she could start her new job on a "payroll Monday."

nor does she dispute that she was looking for other work and put in her notice <u>after</u> finding a new position.  Rather, she only claims that her departure was 'hurried.'" App., Vol. II, 158.

Frank fails to prove a causal link between the protected activity and the deadline imposed by Sorensen.  Temporal proximity can be considered in the causation analysis for retaliation, as the Fifth Circuit noted when citing the *Porter* case. *Hernandez v. Metro. Transit Auth. of Harris Cnty.*, 673 F. App'x 414, 420 (5th Cir. 2016), citing *Porter*, at 948.  "However, the burden has now shifted to a heightened standard of 'but-for' causation, for which temporal proximity, without more, will not suffice." *Hernandez*, at 420, citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).  "'[E]ven at the prima facie stage, temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity.'" *Ladner v. Walmart, Inc.*, 834 F. App'x 893, 897 (5th Cir. 2020), quoting *Thompson v. Somervell Cty., Tex.*, 431 F. App'x 338, 342 (5th Cir. 2011) (per curiam).

The Tenth Circuit has held that the appropriate framework for analyzing a claim of retaliation is the *McDonnell Douglas* framework (*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817 (2006)).  At the first level of that inquiry:

> To make out her prima facie case, Daniels must show (1) "she engaged
> in protected opposition to discrimination, (2) a reasonable employee

29

would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008).

To be materially adverse, an action must be sufficient to "dissuade [ ] a reasonable worker from making or supporting a charge of discrimination." *[Burlington Northern and Santa Fe Ry. Co. v.] White*, 548 U.S. at 68, 126 S.Ct. 2405 (internal citation omitted). This requires injury rising to a "level of seriousness." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1087 (10th Cir. 2007) (internal quotation omitted). While the employer's conduct need not affect the terms and conditions of employment, *White*, 548 U.S. at 64, 126 S.Ct. 2405, the inquiry is an objective one, and not based on a "plaintiff's personal feelings." *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009) (*Semsroth II*).

*Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012).[11]

The district court clearly concluded that "hurrying" the departure of an employee who has already announced her departure was not a materially adverse employment action. And Appellant's Brief cites no cases in support of the proposition that failing to give an employee who has stated her intention to leave an indefinite amount of time to find another job is a materially adverse employment action. Importantly, the EEOC's Brief took no such position.

---

[11] The district court's Order notes in a single sentence that an adverse employment action is a "<u>significant</u> change in employment status, … or a decision causing a significant change in benefits." App., Vol. II, 158–159. Nonetheless, the remainder of the district's court's order properly focuses on the term "materially adverse" in its analysis regarding the alleged retaliation. *See* App., Vol. II, 157–158.

Appellant's Brief claims that "Ms. Frank immediately scrambled to locate another position, and found an opening at the University of Kansas Medical Center." Appellant's Brief, p. 22. But this is simply not what the uncontroverted facts show. Frank's own testimony is that she submitted her resignation on August 30, 2019, the same day she was told that she had fourteen days to locate another job; she already had the University of Kansas job offer at that time. App., Vol. II, 229 (Frank's Deposition, 135:22–23). If the deadline imposed by Sorensen was so materially adverse to Frank and caused her to "scramble," why did Frank immediately turn in her resignation rather than starting her new job immediately or asking for more time? If she was not satisfied with the job offer she already had in hand (App., Vol. II, 229 (Frank's Deposition, 135:22–23)), she could have continued to look during the fourteen days Sorensen gave her to complete her job search (App., Vol. II, 232 (Frank's Deposition, 146:23–25)). To the extent she now claims she lost a week of pay because she could only start her new job on a "payroll Monday," she could have explained that to Sorensen and asked for a short extension of her departure date. Frank did none of those things.

The EEOC's Brief inaccurately and unfairly characterizes this as a "quit-or-be-fired ultimatum." EEOC's Brief, p. 12. Essentially, Frank had already informed her supervisor that she was leaving – it was simply down to timing. Furthermore, the EEOC is mistaken when it claims that "Frank happened to receive an

31

alternative employment offer before the end of Heartland's two-week timeline"
(EEOC's Brief, p. 13) – she had it in hand before the deadline was even imposed.
App., Vol. II, 229 (Frank's Deposition, 135:22–23).  Contrary to the EEOC's
claim, a reasonable jury would not find that "she had not yet received [an offer] - at
the time it issued its ultimatum."  EEOC's Brief, p. 14; App., Vol. II, 229 (Frank's
Deposition, 135:22–23).  The EEOC, which has not been involved in the litigation
of this case, is simply mistaken about the uncontroverted facts.

Perhaps the most analogous situation to the deadline imposed on Frank is
one in which an employer refuses to rescind a resignation.  The EEOC's Brief cites
to the *Porter* case, a Fifth Circuit case from 2015, to illustrate this point.  EEOC's
Brief, p. 13, citing *Porter v. Houma Terrebonne Housing Auth. Bd. of Comm'rs*,
810 F.3d 940 (5th Cir. 2015).  A "rescission of a resignation," however, "will [not]
always be an adverse employment action, but rather … depends on the specific
facts of the case and whether the failure to accept the rescission was retaliatory."
*Williams v. PMA Companies, Inc.*, 564 F. Supp. 3d 32 (N.D.N.Y. 2021) citing
*Porter*, at 947.

Here, the specific factual context of the imposition of the deadline makes
clear that this was not a materially adverse employment action.  To the extent that
the two-week deadline could be perceived as short, it must also be viewed in the
context that despite counseling Frank (unsuccessfully) on her performance

deficiencies, Sorensen allowed Frank time to find another position. The fact that Sorensen eventually needed to fill the job and not continue to employ a sub-par employee who had already stated her intention to leave is hardly evidence of retaliation. This is particularly true in light of the fact that – by Frank's own admission – Sorensen encouraged Frank to report her concerns about Robinson. The notion that Sorensen would somehow change her mind two weeks later and hurry Frank's departure simply because of the report she encouraged is illogical. In its Statement of the Facts, the EEOC's Brief only mentions that Frank reported Robinson "after telling Sorensen of her intent to do so" (EEOC's Brief, p. 4), without acknowledging the testimony from Frank that Sorensen encouraged her to report Robinson. App., Vol. I, 218–219 (Frank's Deposition, 93:17–94:6). Both the EEOC and Frank fail to offer any compelling explanation, or truly any explanation at all, as to why or how Sorensen could have changed her mind so quickly. Such a conclusion certainly is not supported by the record and is further contradicted by Heartland's willingness to allow Frank to continue to work her two-week notice period rather than accepting her resignation on the day she delivered it. App., Vol I, 219 (Frank's Deposition, 96:4–11).

> **4.** **Based on the uncontroverted facts in the record, no reasonable jury could call into question the stated reason for giving Frank a deadline to find other employment, and the district court did not err by granting summary judgment on Frank's retaliation claim.**

Based on the record, no reasonable jury could call into question the stated legitimate, non-discriminatory reason for Heartland giving Frank a deadline to find other employment.  Even if Frank had established a prima facie case, Heartland offered an explanation for Sorensen informing Frank of the deadline.  The burden then shifts to Frank to offer some evidence that Heartland's explanation was pretextual. Frank, however, failed to present facts in the record, even when viewed in the light most favorable to her, to establish any evidence of a causal connection or pretext other than temporal proximity.  Even Frank acknowledges implicitly that temporal proximity is not enough: "Evidence of close proximity in timing remains relevant, when combined with other evidence, to demonstrate pretexrt [*sic*]." Appellant's Brief, p. 60 (emphasis added).  The record offers no such "other evidence" to demonstrate pretext.

Sorensen testified that she told Plaintiff that the plan for Plaintiff to find other work could not be open-ended because Sorensen needed to get the appropriate person hired to do the work Plaintiff should have been doing. App., Vol. II, 89–90 (Sorensen's Deposition 54:14–55:8).  She testified that her regional manager and the CEO were aware of her efforts to improve Plaintiff's performance and felt that Sorensen had been more than accommodating.  App., Vol. II, 89–90 (Sorensen's Deposition 54:21–55:8).  She also testified that Plaintiff's role was a key one and that she could not leave it unfilled indefinitely.  App., Vol. II, 89–90

34

(Sorensen's Deposition 53:19–55:8).  Frank claims that "Although Sorensen claimed that 'corporate was putting pressure on her,' Heartland produced no supporting documentation, such as an email, or memorandum, and even failed to identify the source of this alleged 'pressure.'" Appellant's Brief, p. 59.

However, the burden is not on Heartland to provide *additional* corroboration to Sorensen's sworn testimony.  The burden is on Frank to prove pretext. Appellant's Brief, p. 58. Frank offers no evidence to do so.  In fact, Frank's own deposition testimony was that Sorensen was "supportive" of Frank reporting Robinson to Human Resources – "pleased" and "happy."  App., Vol. I, 218–219 (Frank's Deposition, 93:17–94:6).  It completely defies logic that Sorensen would have encouraged Frank to report Robinson on August 16th and then within just fourteen days, by August 30th, decide to retaliate against Frank for the protected activity she encouraged.    Based on the uncontroverted facts in the record, no reasonable jury could call into question Sorensen's stated reason for giving Frank a deadline to find other employment.  The district court did not err by granting summary judgment on Frank's retaliation claim.

Notably, while the EEOC submitted an amicus brief concerning the difference between a significant adverse employment action for analysis of alleged discrimination and material adversity in the context of alleged retaliation, the EEOC took no position on the district court's finding that "no reasonable jury

35

could find that Heartland's proffered nonretaliatory reason for giving Frank two weeks to resign or get fired was pretextual." EEOC's Brief, fn. 3.

## VIII. CONCLUSION

Based on the record before it, considered in the light most favorable to Frank, the district court did not err in granting summary judgment on both the claims of a hostile work environment and retaliation. No reasonable jury would be able to find for Frank as to either claim. Heartland respectfully requests this Court to affirm the order of the district court, denying the relief sought by the Appellant.

Dated:     June 15, 2022

Respectfully submitted,

STINSON LLP

*/s/ Sara E. Welch*
Sara E. Welch, KS #16350
Emily N. K. Monroe, KS #27428
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
Phone: (816) 842-8600
Fax: (816) 691-3495
Email: sara.welch@stinson.com
Email: emily.monroe@stinson.com

ATTORNEYS FOR DEFENDANT-APPELLEE

## CERTIFICATES OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 8,821 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Tenth Circuit Rule 32(B).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman.

## CERTIFICATE OF PRIVACY REDACTIONS / DIGITAL SUBMISSION

No privacy redactions were necessary in this document. The hard copies being provided to the Court are exact copies of the electronic copies being filed with the Court through the ECF system.  The document is a native PDF document. The digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Sophos Endpoint Security and Control, Version 10.8, which is automatically updated daily.  According to the program, the document is virus free.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2022, I electronically filed the foregoing

with the Clerk of the Tenth Circuit Court of Appeals by using the CM/ECF system,

which will send notice of electronic filing to counsel of record, and I will place one

(1) copy of the same in the U.S. Mail, first class, postage pre-paid, to the following

attorney for Plaintiff-Appellant:

> Mark A. Buchanan
> Law Office of Mark A. Buchanan
> 5324 Chadwick Road
> Fairway, Kansas 66205
> mark@markbuchananlaw.com

> Attorney for Plaintiff-Appellant

I additionally certify that seven (7) exact copies of the Brief of Appellee

submitted electronically will be sent via Federal Express overnight delivery upon

the Court's confirmation that the electronic brief is compliant, addressed to:

> U.S. Court of Appeals
> Office of the Clerk
> Byron White United States Courthouse
> 1823 Stout Street
> Denver, Colorado 80257

As to all Certificates herein included,

*/s/ Sara E. Welch*
Sara E. Welch

ATTORNEY FOR DEFENDANT-
APPELLEE

38

174738141