NO. 22-3031
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
_____

TRACIE E. FRANK,

Plaintiff-Appellant,

v.

HEARTLAND REHABILITATION HOSPITAL, LLC

Defendant-Appellee.
_____

**APPELLANT'S REPLY BRIEF**
_____

Appeal from the United States District Court for the District of Kansas
(Civil No. 2:20-CV-002496-HLT)
The Honorable Holly L. Teeter
United States District Judge


BALDWIN & VERNON

By: s/Mark A. Buchanan
Of Counsel
108 South Pleasant Street
Independence, MO 64050
Tel: (816) 510-1532
(816) 842-1104 (facsimile)
mark@markbuchananlaw.com

Attorneys for Appellant

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

APPELLANT'S RESPONSE TO HEARTLAND'S STATEMENT OF FACTS . . . . . . . . . . . . 1

ARGUMENT & AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    Summary Judgment Should Be Reversed on Ms. Frank's Claim for a Hostile
      Work Environment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A.    Heartland Was Negligent in Failing to Adequately Respond to
      Robinson's Harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

B.    Heartland Failed to Take Remedial Action Calculated to End Robinson's
      Harassment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

II.   Summary Judgment Should Be Reversed on Ms. Frank's Claim for
      Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      A.    Ms. Frank Established a Prima Facie Case of Retaliation  . . . . . . .  24

      B.    The Evidence, Including the Very Close Proximity in Timing,
Established Causation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

      C.    Ms. Frank Also Demonstrated a Genuine Dispute of Material Fact
Regarding Pretext  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF DIGITAL SUBMISSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES
## CASES

*Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664 (10th Cir. 1998). . . . . . . . . . . . . . 18

*Billings v. Town of Grafton,* 515 F.3d 39 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . 12

*Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53 (2006) . 27, 28

*Burton v. Freescale Semiconductor, Inc.,* 798 F.3d 222 (5th Cir. 2015) . . . . . . . 29

*Cadena v. Pacesetter Corp.,* 224 F.3d 1203 (10th Cir. 2000). . . . . . . . . . . . . . . 18

*Carlton v. Mystic Transp., Inc.,* 202 F.3d 129 (2d Cir. 2000). . . . . . . . . . . . . . . 29

*Curran v. AMI Fireplace Co. Inc.,* 163 F. App'x 714 (10th Cir. 2006) . . . . 8, 9, 18

*Debord v. Mercy Health Sys. of Kan., Inc.,* 737 F.3d 642 (10th Cir. 2013) . . 15, 16

*E.E.O.C. v. Sunbelt Rentals, Inc.,* 521 F.3d 306 (4th Cir. 2008). . . . . . . . . . . . . 19

*Harsco Corp. v. Renner,* 475 F.3d 1179 (10th Cir. 2007). . . . . . . . . . . . . 13, 14, 18

*Hernandez v. Valley View Hosp. Ass'n,* 684 F.3d 950 (10th Cir. 2012) . . . . . . . . 11

*Hernandez v. Valley View Hosp. Assoc.,* 684 F.3d 950 (10th Cir. 2012) . . . . . . . . 8

*Kramer v. Wasatch Cnty. Sheriff's Off.,* 743 F.3d 726 (10th Cir. 2014). . . . . . . . 18

*Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062 (10th Cir. 1998) . . . . . . . . . . . . . 10, 11

*Lounds v. Lincare, Inc.,* 812 F.3d 1208 (10th Cir. 2015) . . . . . . . . . . . 8, 21, 23, 24

*Mendoza v. Borden, Inc.,* 195 F.3d 1238 (11th Cir.1999). . . . . . . . . . . . . . . . . 6, 7

*Morgan v. Hilti, Inc.,* 108 F.3d 1319 (10th Cir. 1997) . . . . . . . . . . . . . . . . . 29, 30

*Morris v. City of Colorado Springs,* 666 F.3d 654 (10th Cir. 2012). . . . . . . . . . . 13

*Ms. Frank. Tolan v. Cotton,* 572 U.S. 650-651 (2014) . . . . . . . . . . . . . . . . . . . . . . 8

*O'Shea v. Yellow Tech. Servs., Inc.,* 185 F.3d 1093 (10th Cir. 1999). . . . . . . . . . 11

*Perez v. Thornton's,* 731 F.3d 699 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . 24, 25

*Smith v. Nw. Fin. Acceptance, Inc.,* 129 F.3d 1408 (10th Cir. 1997) . . . . . . . . . . . 9

*Turnbull v. Topeka State Hospital,* 255 F.3d 1238 (10th Cir. 2001). . . . . . . . . . . 10

*Turrentine v. United Parcel Serv., Inc.,* 645 F. Supp. 2d 976 (D. Kan. 2009) . . . 30

*Vance v. Ball State Univ.,* 133 S. Ct. 2434 (2013). . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zisumbo v. Ogden Reg'l Med. Ctr.,* 801 F.3d 1185 (10th Cir. 2015) . 25, 26, 27, 28

## FEDERAL STATUTES

Fed. R. App. P. 32(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**<u>Appellant's Response to Heartland's Statement of Facts</u>**

Heartland recites the facts contained in the district court's background summary. See <u>Heartland's Brief</u>, pp. 11-12.[1] However, it does not identify which facts, if any, were not included in Ms. Frank's Statement of Facts. Moreover, the district court's factual findings are not binding on this Court, as this is an appeal from summary judgment, in which the standard of review is *de novo.*

Heartland states that, "On August 30, 2019, Sorensen told Frank that she could not keep her job open-ended, and she gave Frank until September 13 to find another job, or else she would be terminated." <u>Heartland's Brief</u>, p. 12. In support, Heartland cites to its own statement of facts in support of summary judgment, specifically ¶¶ 13, 15. App.-I: 158-59. However, Ms. Frank did not testify that she received the ultimatum on August 30, 2019. She described that she received the ultimatum about one week after she reported Robinson, then resigned about one week after that.

> Q.     And then you say in the charge, and let me find this part.  So you
>          say here that (as read), On August 19th, 2019, I reported
>          Robinson's harassment to HR.  **Then you wrote (as read), About
>          one week later, Ms. Sorensen came to my office and stated she
>          couldn't keep my job open ended.**  She gave me until September
>          13, 2019, to find another job or be fired.  On that date I resigned
>          because of her threat of termination. **So when we were talking
>          about this date, one week later that you resigned,** are we

---

[1] All citations to pages of Heartland's Brief refer to the system-generated number.

1

talking about August 30th, 2019?

A.     Yes.

Q.     And so it's a little more than one week if the August 19th date is accurate; right?

A.     Right. I was estimating.

App.-I:232, Frank deposition, pp. 146-47 (emphasis added). In other words, the questions were asking Ms. Frank about two, different one-week time intervals.

Heartland also asserts that Ms. Frank's Statement of Facts contains a section that was not presented to the district court. Heartland's Brief, p. 16. However, Ms. Frank did refer to these facts, pertaining to Robinson's insulting and demeaning treatment of two nurses. App.-I: 187-88. In their interviews with Human Resources, both women reported that Robinson berated them for seeking his help, even though he was (a) a licensed nurse, and (b) was the administrator on call. App.-I: 131-32.

Heartland also asserts that Ms. Frank included what it refers to as "new facts" in her Statement of Facts, that actually "are further evidence that much of what Robinson's coworkers complained about was rude and overbearing behavior – not sexual harassment." Heartland's Brief, p. 18. However, although John Hughes denied knowing about the previous harassment by Robinson, Ms. Welch testified to the contrary in her Declaration. App. Vol.-II, pp. 80-81.

Finally, Heartland repeats its assertion that Ms. Frank did not need to "scramble" to locate another job, because she already had secured a job when Sorensen gave her a deadline for termination. Heartland's Brief, p. 18, n. 5. However, as Ms. Frank testified, she received a short deadline to find a new job from Sorensen: **"I was on a timeline and had to hurry to find something."** App.-I: 229-30, dep. 137-38. Sorensen stated she did not recall when she gave the ultimatum. "A. I don't recall when that conversation happened; but, yes, that conversation did occur." App.-2:54, dep., p. 56.

3

## ARGUMENT & AUTHORITIES

### Introduction

Summary judgment should be reversed because genuine disputes of material fact exist regarding Ms. Frank's claims for sexual harassment, and retaliation. Throughout its brief, Heartland repeats the district court's factual findings, without addressing the main points (and authorities) raised in Ms. Frank's Opening Brief. These include that the district court's Order granting summary judgment miscounted the number of Robinson's offensive comments, (as Heartland had urged in its summary judgment papers), ignored several incidents, and discounted others as non-gender related. *See* Defendant's Summary Judgment Suggestions, App-II:103-04 (asserting that, "Plaintiff alleges only a handful of incidents"). As the district court concluded:

> Construing all facts in Plaintiff's favor, Robinson made four inappropriate comments, complimented Plaintiff's shirt five to seven times while looking her up and down, and frequently looked at Plaintiff and told her how nice she looked over a four-month period.

Memorandum & Order, p. 5; App-2:149. First, Ms. Frank testified that the alleged "compliments" were unwelcome because they followed Robinson's comment in April 2019 referring to a date that she was planning as "a dick meeting." App-I:76, dep. 50: 1-17. This comment tainted his later interactions with Ms. Frank, which the district

court improperly viewed in isolation.

In addition, Heartland fails to prove that Robinson's "daily stares" when viewed in the context of his sexual remarks, may not comprise part of a work environment that a reasonable jury could find was abusive and hostile. The district court relied heavily for its holding on *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1246–47 (11th Cir.1999). App.II at 150, Memorandum and Order, p 6. However, that Court did <u>not</u> hold that suggestive stares cannot comprise part of a hostile work environment. Indeed, in *Mendoza,* the alleged harasser did not make *any* offensive comments. *Id.* at 1243.

In *Mendoza*, the plaintiff alleged that her supervisor was "constantly watching" her, following her around, and looking her up and down. *Id.* at 1242. However, she also testified that the supervisor "never said anything" while doing so. *Id.,* p. 1243. And, the allegations included that he three times made "a sniffing motion" while staring at her groin area, and once rubbed his hip against hers near a fax machine. *Id.* at 1243. Again, however, the Court emphasized that in none of these other instances did the supervisor say anything to her. *Id.*

Instead, the only alleged offensive remark was, "Yeah, I'm getting fired up, too," in response to her statement, "I came in here to work, period" *Id.* at 1243. She also testified that the supervisor never used vulgar language. *Id.*

5

These facts are not comparable. The district court compared these facts to Robinson's habit of looking Ms. Frank up and down. App.-II, pp. 150-51. However, unlike that case, Robinson did make "inappropriate and crude" comments to Ms. Frank which poisoned the work environment. As she testified, these included staring at her chest while stating, "can't miss those bad boys," . . ."

Q.     Okay. And so tell me when that happened?

A.     I don't know exactly when it happened. I just know that as I was walking by him he walked by me pretty closely and looked down at my chest and said, "you can't miss those bad boys."

App. Vol. I: 208; dep. 53. Indeed, Heartland's investigation notes highlighted this fact: "No one should ever be uncomfortable at work; **looks at her chest;** reported "can't miss those bad boys;" she keeps her door closed." App.-I: 104. Thus, contrary to the district court's finding, there was nothing "vague" about Robinson's intent.

Nor did the plaintiff in *Mendoza* support her claim with an independent, corroborating witness, as Ms. Frank does here. App.-I:129. The statement of Ms. Morrison confirmed that Robinson repeatedly referred to sex, e.g.: "firemen are known for wanting only one thing"; "that's a dic call"; and, "you know what he wants" referring to Ms. Frank planning to see her boyfriend that night. *Id.*

Heartland's argument that Robinson's comments were gender-neutral is also a disputed fact; under the totality of the circumstances standard, its interpretation is

not one that a jury would be required to accept. Instead, Heartland asks the Court to construe the reasonable inferences in its favor, which is improper on an appeal from summary judgment. Instead, all credibility determinations and reasonable inferences should be construed in favor of Ms. Frank. *Tolan v. Cotton,* 572 U.S. 650-651 (2014). If the employer's belief is disputed, the dispute must be resolved in the employee's favor. *See* id.

## I.  SUMMARY JUDGMENT SHOULD BE REVERSED ON MS. FRANK'S CLAIM FOR A HOSTILE WORK ENVIRONMENT.

This Court has cautioned that pervasiveness "is not [simply] a counting measure.... [and requires] a broader contextual analysis that carefully considers each instance as a component of the overall workplace milieu." *Lounds v. Lincare, Inc.,* 812 F.3d 1208, 1223 (10th Cir. 2015) (citations and internal quotation marks omitted).

Here, the district court's failure to credit *all* of the alleged discriminatory incidents which comprise Ms. Frank's work environment mandates reversal of summary judgment. *See Curran v. AMI Fireplace Co. Inc.,* 163 F. App'x 714, 720–21 (10th Cir. 2006) (reversing summary judgment); *Hernandez v. Valley View Hosp. Assoc.,* 684 F.3d 950 (10th Cir. 2012) (reversing summary judgment).

In its brief, Heartland ignores these cases, and this Court's similar ruling in

*Smith v. Nw. Fin. Acceptance, Inc.,* 129 F.3d 1408, 1415 (10th Cir. 1997) (holding that evidence of six sexually derogatory statements over twenty-three months, some repeated frequently, sufficient to support a finding of pervasive harassment).

Heartland does not dispute that Cheryl Morrison, the executive assistant to the CEO, John Hughes, confirmed several incidents of unwelcome conduct by Robinson which she and Ms. Frank reported. App.-I:129. Combined with Ms. Frank's testimony the evidence shows enough incidents, of sufficient severity, to mandate a jury trial.

Heartland conflates Robinson's habit of looking Ms. Frank up and down while commenting on her clothing, with his statements telling her "how nice she looked." (Def's Brf., p. 22). But, these were two different ways that he attempted to ingratiate himself, and belittle, Ms. Frank. Heartland asserts that the "looks" and comments that Ms. Frank reported were allegedly "vague" or gender neutral. However, Ms. Craig confronted Robinson about these "comments and looks that made her uncomfortable," which Robinson did not deny. App.-I:104. Also, Heartland ignores that a reasonable woman could find these repeated comments about her clothing as humiliating. *See Curran,* 163 F. App'x at 721 (stating that, although not physically threatening, these remarks "undoubtedly were humiliating, since they concerned Curran's physical attributes and clothing." *Id.*

Heartland argues that even if Ms. Frank identified "at least 15 separate

8

instances of offensive conduct" in about four months, the district court was *still* correct to find this insufficient to create a question of fact. Heartland's Brief, pp. 23-24). How so? It cites no cases so holding, and ignores several cases in which this Court has reversed summary judgment based on far fewer incidents.

Indeed, instead of pervasiveness, Heartland discusses the severity of the harassment, citing *Turnbull v. Topeka State Hospital,* 255 F.3d 1238 (10th Cir. 2001), and *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062 (10th Cir. 1998), which involved more serious incidents. Heartland then states that only "a handful of comments" do not establish "severe" harassment.  Heartland's Brief, p. 23.

However, Ms. Frank has never contended that the harassment she experienced was comparable in severity to a sexual assault. Heartland's argument therefore attacks a straw man. Merely because Ms. Frank did not experience a sexual assault, or physical attack, has no bearing on whether the facts here are sufficient to create a jury question on pervasiveness.

Heartland shifts grounds on appeal, asserting that Robinson's comments  – which the district court found were "inappropriate and crude" – were actually not that offensive. Heartland's Brief, pp. 23-24. Heartland says that asking Ms. Frank if she had received any replies from "black dudes" on dating applications "does not on its face indicate that Robinson wanted to date Frank;" and possibly was just, "curiosity

by a coworker." And, it posits that comments about Ms. Frank's clothing are, "not objectively hostile or abusive, nor is a generic comment about firefighters." *Id.* But, a reasonable jury could find to the contrary, which makes this issue inappropriate for resolution on summary judgment. As this Court has stated, "We have long held that "[f]acially neutral abusive conduct can support a finding of [gender] animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly [gender]-discriminatory conduct." *Hernandez v. Valley View Hosp. Ass'n,* 684 F.3d 950, 960 (10th Cir. 2012) (quoting *O'Shea v. Yellow Tech. Servs., Inc.,* 185 F.3d 1093, 1097 (10th Cir. 1999). A similar result should follow here.

Heartland says that the district court avoided what it calls "double-counting" of the incidents alleged by Ms. Frank. Heartland's Brief, p. 28. But, it fails to address the variety of incidents which the district court overlooked. For example, the district court only considered Robinson's statement that, "Firemen are only interested in one thing." (App. Vol. 1 at 235, Frank deposition, p. 158). But, Ms. Morrison added: "Last week Cheryl heard Dre ask Tracie what she was doing that night. Tracie said she was going over to Doug's. Dre made a statement similar to **'you know what he wants.'**" Tracie walked off." App.-I, at 129. This did not avoid double-counting, but ignored a separate incident.

10

Indeed, it is undisputed that these were examples – not an exhaustive list – which ultimately forced Ms. Frank to keep her office door closed, in a vain attempt to avoid Robinson who officed directly next to her. And, as the district court failed to analyze, she described suffering "every single day" because their offices were so close together, that she could never get away from him. (App. Vol. 1 at 215, Frank deposition, pp. 80-81).

At bottom, the district court relied primarily on cases in which other courts have granted summary judgment; indeed, Heartland includes another such list in its brief. <u>Heartland's Brief</u>, pp. 17-18, n. 8. However, as another Circuit Court has stated, such mechanical comparisons are inappropriate in evaluating the specific facts of a hostile work environment.

> The highly fact-specific nature of a hostile environment claim tends to make it difficult to draw meaningful contrasts between one case and another for purposes of distinguishing between sufficiently and insufficiently abusive behavior . . . Again, we agree with the Second Circuit that "the fact that ... actions did not constitute a hostile work environment in [one] case, when considered as part of all the circumstances there, does not establish a rule that similar actions in another context would not, as a matter of law, amount to one."

*Billings v. Town of Grafton,* 515 F.3d 39, 49 (1st Cir. 2008) (reversing summary judgment) (citations omitted); *see also Harsco Corp. v. Renner,* 475 F.3d at 1186 (same).

11

Finally, Heartland does not attempt to defend the district court's reliance on *Morris v. City of Colorado Springs,* 666 F.3d 654 (10th Cir. 2012). App.-II:153. Heartland's Brief, p. 22. As pointed out in Ms. Frank's Opening Brief, *Morris* involved far fewer incidents, which were not sex-based, and occurred in the distinct work environment of an operating room. *Id.* at 668. By ignoring this argument, Heartland implicitly concedes that the district court was wrong to find that "this case is like *Morris.*" *See* Memorandum and Order, p. 9.

For these reasons, the district court's failure to consider the totality of the circumstances warrants reversal. *See Harsco Corp. v. Renner,* 475 F.3d 1179, 1187 (10th Cir. 2007) (characterizing defense that the alleged harassing comments were gender-neutral as "circumvent[ing] the proper 'totality of the circumstances' test by conveniently stripping facts of their context, which we have affirmed to be the touchstone of our analysis."). This is exactly what occurred here. Accordingly, summary judgment on this issue should be reversed.

### A. Heartland Was Negligent in Failing to Adequately Respond to Robinson's Harassment.

A genuine dispute of material fact also exists regarding Heartland's negligence in failing to prevent sexual harassment. On this issue, Ms. Frank presented the Declaration of Angela Welch, a former Director of Nursing, along with her Charge

12

of Discrimination, and the resignation letter which she had submitted to Heartland's

Human Resources Department in December 2017. App.-II: 77-92. Heartland does not

discuss any of the facts of Ms. Welch's allegations. Instead, it asserts that Ms.

Welch's "lengthy complaint" only accused Robinson of making "two inappropriate

remarks." Heartland's Brief, 32, quoting App.-II, p. 156. But, fairly construed, Ms.

Welch provided strong evidence of Heartland's negligence. As Ms. Welch stated:

> I had heels on one day and Dre said, "Wow! You are wearing heels . . .
> you should wear them more often, they make you look taller and more
> sexy." I told Dre that is not ok to say to me and that I was completely
> offended. He just laughed and said, "Ok, Ok. Sorrrrrry!" I told John and
> he told me "that's just how Dre is and that I should talk with Dre about
> it again, if it bothers me."

App.-II: 82. Ms. Welch also reported that Robinson was whistling at Rebecca

Colbern, Director of Therapy, and making fun of Colbern's clothing. App.-II: 82.

However, when Ms. Welch reported these incidents to Hughes, he failed to take any

remedial action. *Id.*

Ms. Welch also reported that Hughes told her, "more inappropriate things have

happened and been reported by others," causing him to apologize for ignoring her

earlier complaints. App.-II:82-83. Heartland's brief ignores these facts, which a

reasonable jury could find placed Heartland on notice that Robinson was harassing

numerous female employees. Indeed, it is hard to imagine clearer notice to an

employer than a charge of discrimination that is filed with the EEOC.

Heartland contends that Ms. Welch's testimony was not corroborated. However, a reasonable juror could find that it was not corroborated only because Heartland failed to conduct an investigation. Moreover, a jury could credit Ms. Welch's testimony that Hughes brushed off her complaints, and failed to discipline Robinson while harassing her.

Despite this, it was undisputed that Hughes was not disciplined, and participated in the subsequent EEO investigations that exonerated Robinson. However, the district court never mentioned Hughes in its discussion of Heartland's negligence.

Heartland also asserts that the events Ms. Welch reported were allegedly too remote in time to provide notice. Heartland's Brief, pp. 31-32. But, it is undisputed that these events occurred in 2017, were reported in the fall of 2017, and that Heartland settled Ms. Welch's charge of discrimination in the spring of 2018. This was sufficiently near in time to create an issue of fact regarding constructive notice. *See Debord v. Mercy Health Sys. of Kan., Inc.,* 737 F.3d 642, 651 (10th Cir. 2013) (holding that evidence of alleged harassment that occurred some three years before the plaintiff was hired was properly considered). However, Heartland fails to discuss *Debord,* or attempt to distinguish its holding.

14

Heartland also states that, ". . . not all of the women interviewed in these investigations reported conduct that even arguably could be considered sexual harassment." Heartland's Brief, pp. 30-31. However, Ms. Frank offered these extensive reports to demonstrate that Heartland knew or should have known that Robinson was making insulting, derogatory and humiliating remarks to numerous women, from 2017 to 2019.

In summary, it is undisputed that Ms. Welch's report – which was settled during an EEOC mediation – involved sexual harassment, both by Robinson and CEO Hughes. Despite her complaints, Hughes was not disciplined, remained in his role as CEO, and participated in the subsequent investigations of Robinson, which shielded him from any disciplinary action.

In addition, Ms. Frank also relied on the nearly 50-pages of investigation documents of previous reports of discriminatory comments and conduct by Robinson. App.-I: 103-152, Def's Exhibit F. Ms. Frank offered this evidence to show that Robinson engaged in a documented "campaign of harassment" against female employees, including these women who reported him:

- Angela Welch,   App.-II: 77-92;

- T'Cara Williams, App.-I:105;

- Rebecca Colbern, App.-I:112-13;

15

- Megan Hall, App.-I: 114-15;

- Cheryl Morrison, App.-I: 114, 129;

- Rebecca Silverman App.-I: 133-150;

- Penny Muthoka, and Lucy Mallya, App.-I: 131-32; and

- Tracie Frank, App.-I: 130.

Moreover, these investigation documents also contain the names of other female employees who Robinson targeted with his sexist remarks, jokes, and innuendos, either to them directly, or to other women who overheard them. App.-I: 112, 114.

Heartland says that the district court properly considered all of these facts in evaluating whether Ms. Frank established constructive notice. Heartland's Brief, p. 31. However, Heartland does not dispute that the district court found only "four instances" of prior reports of harassment. Heartland's Brief, p. 32.

These documents – contained in Heartland's Human Resources files – demonstrate a pattern of harassment, which raises a dispute of material fact regarding notice, which a jury must resolve. *See Cadena v. Pacesetter Corp.,* 224 F.3d 1203, 1209 (10th Cir. 2000) (holding that managers were on notice of prior harassing behavior yet did nothing to stop it).

16

**B.    Heartland Failed to Take Remedial Action Calculated to End Robinson's Harassment.**

Under Title VII, "[e]mployers have a duty to express strong disapproval of sexual harassment, and to develop appropriate sanctions." *Kramer v. Wasatch Cnty. Sheriff's Off.,* 743 F.3d 726, 749–50 (10th Cir. 2014). To show negligence, Ms. Frank is required to prove that Heartland had actual or constructive knowledge of the hostile work environment, but did not adequately respond. *Harsco Corp. v. Renner,* 475 F.3d at 1186 (citation omitted); *Curran,* 163 F. App'x at 719.

An employer may avoid liability for negligence if it undertakes remedial and preventative action "reasonably calculated to end the harassment." *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 676 (10th Cir. 1998). Hughes's response to Ms. Welch's complaints failed to meet that standard. App. Vol. 2, pp. 81-82, Welch Charge of Discrimination) (Hughes repeated ,"That's just how Dre is . . ." and she should talk with Robinson *again* to work things out.).

Heartland does not dispute that it failed to discipline Robinson. App.-1:41, Pretrial Order ("Defendant had not, however, previously been able to corroborate sexual harassment allegations against Mr. Robinson."). And, Heartland does not respond to our argument that merely *counseling* Robinson, without disciplining him, or monitoring his behavior, was inadequate to prevent future harassment. Predictably,

on the heels of the fall 2018 investigation, in February 2019, Rebecca Silverman reported Robinson for bullying her, (falsely accusing her of opening his personal package), and using the term "dildo" in a conversation. App. I:133.

Again, however, the district court minimized this incident, saying, "The investigation was inconclusive, and neither side could corroborate their story." App.-II:156. However, this ignores that Hughes himself told Ms. Craig: "John feels Dre said it." App.-I:139. Further, although Robinson denied calling Ms. Silverman and bullying her, Ms. Craig's investigation showed that Robinson had done so. App.I-273: dep. 125. Despite this, he received no discipline, and nothing was done to monitor Robinson. (App. Vol. 2 at 30, Hughes deposition, p. 105). Barely a few weeks later, in April 2019, Robinson began harassing Ms. Frank.

This inaction in the face of numerous red flags demonstrates negligence in allowing the continuation of a hostile work environment at Heartland. *See E.E.O.C. v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 320 (4th Cir. 2008) ("At the same time, however, Riddlemoser and Dempster failed to take additional action that a rational juror might consider reasonably calculated to end the harassment.").

Moreover, Heartland ignores Ms. Frank's argument that under *Vance v. Ball State Univ.,* 133 S. Ct. 2434, 2452 (2013), Robinson's status as a company director "is an important factor to be considered in determining whether the employer was

negligent." *Id.* Indeed, Heartland seems to have recognized this factor, but did not act on it. In the September 2018 meeting with Hughes, and Ms. Craig, Robinson was told:  "The conclusion is that you have made comments that are construed as inappropriate. As a director of the hospital, that can't happen." App.-I: 105, 106. However, the only "discipline" imposed was assignment to watch a video on workplace diversity. *Id.*

Heartland provides no explanation why Robinson, as Quality Director, had any business reasons for wedging himself into Ms. Frank's personal life. Such conduct, along with sitting at the nurse's station, while openly engaging in "sarcastic banter" with the nursing staff, was how had Robinson had mistreated other women at Heartland since 2017. Robinson used his director position to enable his harassment, which would have been impossible except for his role as an executive. The failure to monitor, control, or discipline him demonstrates a culture of tolerating harassment. *See* id.

Heartland argues that Hughes disputed that he was aware of sexual harassment allegations against Robinson rather than only, "aggressive and rude behavior." Heartland's Brief, p. 29. Again, this merely views the evidence and reasonable inferences in favor of Heartland. Defendant also says, "not all of the women interviewed in those investigations reported conduct that even arguably could be

considered sexual harassment." <u>Heartland's Brief</u>, p. 30. Again, however, a reasonable jury cold find to the contrary. *See Lounds, supra,* 812 F.3d at 1227 (noting it is for the fact finder to decide whether conduct that appears not explicitly gender-based could reasonably be viewed as related to gender or arose out of a context in which admittedly sex and gender-related conduct occurred).

The district court found that Robinson was "reprimanded" and "admonished" in September 2018. App.-II: 156. However, the memorandum and complaint form did not mention "sexual harassment," or say that Robinson was found in violation of Heartland's harassment policy. App.-I, p. 116-117. The only offensive comments quoted were him asking if new employees in the Therapy Department were "hot," and making an insulting remark that Dr. Miles was pregnant, and could not do her job. *Id.*

But, the numerous incidents unearthed in the fall of 2018 showed a continuous pattern of harassment. They followed by about one year Ms. Welch's complaint. An employer should not receive a base-on-balls for a prior complaint, which was reported in a formal Charge of Discrimination. This is especially true because Ms. Welch reported that Hughes admitted to her that, "more inappropriate things have happened and been reported by others." App.-II:82-83. In light of Ms. Welch's reports, and Hughes's admissions, the decision to only issue a verbal warning to Robinson in September 2018 was inadequate as a matter of law, because it failed to deter the

20

harassment of Ms. Silverman, and Ms. Frank.

Robinson's harassment of Ms. Welch should have resulted in an investigation, and appropriate discipline. Instead, it was swept under the rug by Hughes, who was also a harasser. Indeed, Ms. Craig testified that when she starting working at Heartland in April 2018, she was not even aware that Ms. Welch had filed a charge of discrimination, or reported Robinson. App.-I: 263, dep. 82-83 ("A. No, I was not aware that in Angela Welch's charge that Adriel Robinson was involved."). A genuine dispute of material fact therefore exists regarding constructive notice of Robinson's harassment, and failure to take appropriate remedial action. As a result, summary judgment on this issue should also be reversed.

## II.     Summary Judgment Should Be Reversed on Ms. Frank's Claim for Retaliation.

**Introduction**

Heartland shifts grounds on appeal to focus on Mr. Frank's alleged admission that she already had a job in hand before Ms. Sorensen imposed the September 13, 2019 deadline for termination. Heartland's Brief, pp. 38-39. In support, Heartland cites to Ms. Frank's deposition testimony. App.-I: 229, dep. 135:22–23.[2] However, the cited testimony does not state that Ms. Frank already had a job offer when she

---

[2] Heartland's Brief mistakenly cites to Vol. II of the record.

received the ultimatum. Instead, the testimony only states: "Q. So you had the job offer in August?  A. That sounds about right." *Id.*

Moreover, in the district court, Heartland never argued that Ms. Frank already had a job offer "in hand" before Sorensen gave her a termination deadline, neither in its initial memorandum in support of summary judgment, App.-I, pp. 69-72; nor in its reply memorandum. App.-I: 109-110. As a result, Heartland has forfeited this argument on appeal.

More important, the record does not support this alleged fact which Heartland now asserts is decisive. Instead, in her Charge of Discrimination, Ms. Frank stated that she received the ultimatum "about one week" after she reported Robinson. App.-I, p 19. And, in her deposition, she testified the same. App.-I:232, Frank deposition, pp. 146-47. It is true that Ms. Frank did not controvert Heartland's Statement of Fact No. 15, which stated:

> 15.    Plaintiff believes that Sorensen told Plaintiff that Sorensen could not keep Plaintiff's job open ended on August 30, 2019, and that Sorensen gave her until September 13, 2019. On that same day, Plaintiff submitted her resignation letter. Ex. A, Frank Dep. 146:21- 147:5.

RESPONSE:  Uncontroverted.

App.-I: 159. However, this statement of fact was at best ambiguous. As stated above, in Ms. Frank's Response to Heartland's Statement of Facts, her deposition testimony

does not say that she received the ultimatum on August 30, the same day that she resigned. Instead, Ms. Frank confirmed what she had stated in her Charge of Discrimination: "About one week later, Ms. Sorensen came to my office and stated she couldn't keep my job open-ended." *Id.* It is an unreasonable to stretch Ms. Frank's estimate of *one* week after her report, which occurred on August 16, 2019, to August 30, 2019, which was *two* weeks later.

Finally, the district court did not make such a finding, noting that Ms. Frank contended she was "rushed to find a new job," and that her departure was "hurried" as a result of the deadline. App.-II: 158-59. Heartland's argument that the failure to controvert this alleged fact is an admission is meritless, in light of the contrary evidence in the summary judgment record. As the Court stated in *Perez v. Thornton's,* 731 F.3d 699, 706 (7th Cir. 2013):

> Where the moving party has undermined its own Local Rule 56.1 assertion through the presentation of contradictory assertions and evidence, a nonmovant's "admission" of the movant's assertion is not decisive. To find otherwise would serve only to reward parties who successfully obfuscate the record and engage in "gotcha" litigation tactics.

*Perez,* 731 F.3d at 706. For these reasons, Heartland's argument is without merit.

### A.    Ms. Frank Established a Prima Facie Case of Retaliation.

Heartland does not dispute that Ms. Frank engaged in protected activity on

August 16, 2019, when she reported Robinson's harassment to Human Resources.

Although the bulk of Heartland's argument is that Ms. Frank supposedly had a job

offer in hand when she received the ultimatum, it also contends that Ms. Frank cannot

establish a causal connection between her reporting Robinson, and Sorensen

imposing the termination deadline.  Heartland's Brief, 36. In particular, Heartland

argues that temporal proximity alone is not sufficient to establish causation. However,

Heartland does not dispute that, under this Court's precedents, the very closing timing

is sufficient alone to demonstrate causation. *See Zisumbo v. Ogden Reg'l Med. Ctr.,*

801 F.3d 1185, 1200 (10th Cir. 2015). Moreover, as described below, this proximity

in timing is also evidence that creates a jury question regarding pretext. *Id.*

### 2.    The Evidence, Including the Very Close Proximity in Timing, Established Causation.

Heartland argues that causation cannot be shown because Sorensen allegedly

"encouraged" Ms. Frank to report Robinson. Heartland's Brief, p. 33. However, Ms.

Frank testified that Ms. Morrison encouraged her to report, not Sorensen. App.-I: 216,

dep. 84-85. ("I was encouraged to make a report by Cheryl Morrison."). Indeed,

Sorensen's actions speak louder than her words. She came to Ms. Frank's office about

one week later, telling her that she needed to find another job, or be fired. *Id. See*

*Zisumbo* (holding that evidence that the plaintiff's supervisor suddenly resurrected

a performance issue that had been dormant for months showed a retaliatory motive).

In addition, contrary to Heartland's argument, the record does not show that Sorensen had decided to terminate Ms. Frank *before* her protected activity. Instead, she was placed on a performance improvement plan several months before, in April 2019, which Sorensen admitted was a "coaching" tool, and not a disciplinary action. App.-2:64, dep., p. 96.

Nor does Heartland refer to any evidence of continuing performance issues after April, that would justify the sudden need to replace Ms. Frank. Indeed, it is undisputed that Ms. Frank had successfully completed all steps required in the PIP, and Sorensen never mentioned it to her again. App.-I: 214, dep. 75, lines 11-15. Nonetheless, Heartland asserts that Sorensen needed to fill the job rather than, "continue to employ a sub-par employee." Heartland's Brief, 40. But, the record does show any continuing performance problems. A reasonable jury could therefore find that Ms. Frank was attempting to locate another position, without a deadline, until one was imposed due to resentment of her protected activity.

In addition, Ms. Frank's only performance review – which she received in January 2019 – was generally positive. App.-II: 75-76. The review stated that she had no tardies in her entire job history, was "dependable," and completed assignments in a timely manner. *Id.* The only areas of improvement noted were "Need to continue

25

expanding your role . . . ." *Id.*

### B.    Ms. Frank Established That the Two-Week Termination Deadline Was a Materially Adverse Employment Action.

Heartland asserts that the district court did not confuse the standards for a discrimination claim, which requires an "adverse employment action," with the lesser standard for a retaliation claim, which requires only that the challenged action is materially adverse." Heartland's Brief, p. 38, n.11. However, the district court definitely applied the higher standard, because it required Ms. Frank to prove a "significant change" in employment status or benefits. App.-II: 158-59.

As the Equal Employment Opportunity Commission argues in its amicus brief, under the correct standard, announced in *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53 (2006), the imposition of the sudden termination deadline was materially adverse. EEOC's Brief, pp. 14-19. As the EEOC suggests, "At the time Frank made her harassment claim, Heartland had not imposed any particular timeline for her to leave her current role, and indeed Sorensen was actively supporting her at work." *Id.,* p. 16/22.

Heartland responds to this by stating, "The EEOC's Brief inaccurately characterizes Sorensen's deadline as a "quit-or be-fired ultimatum."  EEOC's Brief, p. 12. Essentially, Frank had already informed her supervisor that she was leaving –

it was simply down to timing." Heartland's Brief, p. 38. Again, however, Heartland
ignores that the very close timing strongly suggests a retaliatory motive. Further,
Heartland ignores that Sorensen has no documentation of any alleged performance
problems by Ms. Frank. Indeed, a jury could reasonably find that after completing all
steps of the performance improvement plan, Ms. Frank was no longer on thin ice, but
rather was permitted to continue fulfilling her job duties indefinitely. The only
intervening acts were Ms. Frank's protected activity, and Robinson's long overdue
termination – not any performance issues.

The imposition of a sudden deadline to find another job, or be fired, could
dissuade a reasonable employee from making or supporting a claim of discrimination.
As a result, Ms. Frank also satisfied this element of her *prima facie* case.

### C.    Ms. Frank Also Demonstrated a Genuine Dispute of Material Fact Regarding Pretext.

As this Court has held, a close proximity in timing after protected activity,
when combined with other evidence, is evidence of pretext. *See Zisumbo,* 801 F.3d
at 1200. (citations omitted).

Heartland repeats here that Sorensen allegedly "encouraged" Ms. Frank to
report Robinson. However, nothing in the record suggests that Sorensen played any
role in Ms. Frank's decision to report Robinson. As a result, Heartland is not entitled

27

to the inference, or presumption, that imposing a termination deadline was not based on a retaliatory motive.

Sorensen stated that she was being pressured by "corporate" to replace Ms. Frank – which did not occur until after Ms. Frank's protected activity. A reasonable juror could find that the alleged "frustration" with Ms. Frank was based on resentment of her reporting sexual harassment, not business needs.

Under these circumstances, the missing documentation of such a business need shows pretext. *See, e.g., Burton v. Freescale Semiconductor, Inc.,* 798 F.3d 222 (5th Cir. 2015) (although a lack of contemporaneous documentation alone is not evidence of pretext – an employee must also demonstrate why the absence matters – here, the lack of documentation matters because the defendants charge Burton with a history of performance problems); *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 137, (2d Cir. 2000) ("If Carlton's performance had declined, as defendant insists, it seems surprising that there was no contemporaneous proof of that fact").

Finally, Heartland abandons any reliance on *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997). App.II: 160-61. As pointed out in Ms. Frank's Opening Brief, *Morgan* is distinguishable because the proximity in timing there was lacking (six months versus only two weeks here), and the plaintiff had received an interim write-up about her absences before her termination. *Id.* at 1324. Thus, a reasonable

28

jury could find that Ms. Frank's complaint was a determining factor in the decision to impose a termination deadline. *See Turrentine v. United Parcel Serv., Inc.,* 645 F. Supp. 2d 976, 992 (D. Kan. 2009) ("In the absence of evidence explaining why these circumstances suddenly became significant in May 2007, a reasonable jury could conclude that UPS manufactured these reasons as an excuse to change plaintiff's start time in retaliation for her protected activity.").

## <u>CONCLUSION</u>

For all of these reasons, summary judgment on Ms. Frank's claims for sexual harassment, and retaliation should be reversed, and this case remanded for a jury trial.

Respectfully submitted,

BALDWIN & VERNON

By: <u>s/Mark A. Buchanan</u>
Of Counsel
108 South Pleasant Street
Independence, MO 64050
Tel: (816) 842-1102
Fax: (816) 842-1104
mark@markbuchananlaw.com

Attorneys for Appellant Tracie Frank

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

**Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

Pursuant to Rule 32(a)(7) of the Federal Rules of Appellate Procedure, and by following the format of the Tenth Circuit Clerk's Office Form 6: "COC-1Certificate of Compliance With Type-Volume Limit," the undersigned hereby certifies that:

1.      This brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because, not counting the items listed as exempted by Fed.R.App.P.32(f),

        Appellant's Brief contains 6,222 words,

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because:

        a.      This brief has been prepared in a proportionally spaced typeface using WordPerfect 2020 in size 14 Times New Roman font.

Date:  July 7, 2022

        s/<u>Mark A. Buchanan</u>
        Attorneys for Appellant

30

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

**Certificate of Compliance Regarding Privacy Redactions,
Hard Copies, and Virus Scan,**

Pursuant to Tenth Circuit ECF User Manual:

1.      All required privacy redactions have been made (see 10th Cir. R.25.5).

2.      The hard copies being provided to the Court are exact copies of the electronic copies being filed with the Court through the ECF system.

3.      Appellant's Brief was scanned for viruses with the latest version Microsoft Defender. According to the program, Appellant's Brief is free of viruses.

Date:  July 7, 2022

s/<u>Mark A. Buchanan</u>
Attorneys for Appellant

31

## <u>NOTICE OF FILING AND PROOF OF SERVICE</u>

I certify that on July 7, 2022, a copy of the foregoing Appellant's Brief was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send email notification of same to the following attorneys of record. I have signed the original brief and will maintain it for a period of time not less than the maximum allowable time to complete the appellate process. Seven (7) hard copies of this brief will be securely bound and will be forwarded in a method to ensure they arrive at the clerk's office within five business days of filing, pursuant to 10th Cir. R. 31.5.

Sara E. Welch
Emily N. K. Monroe
STINSON LLP
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
Phone: (816) 842-8600
Fax: (816) 691-3495
sara.welch@stinson.com
emily.monroe@stinson.com


s/<u>Mark A. Buchanan</u>
Attorneys for Appellant